# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RENE F. FERNANDEZ, | Case No.: 2:13-cv-02158-GMN-VCF |
| Petitioner | **Order** |
| v. | |
| JAMES GREG COX, *et al.*, | |
| Respondents. | |

On March 6, 2017, this court denied Rene F. Fernandez's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and denied a certificate of appealability. ECF No. 53. Judgment was entered in favor of the Respondents and against Fernandez on March 7, 2017. ECF NO. 54. Fernandez filed a notice of appeal and a motion for request for a certificate of appealability on April 5, 2017, and April 10, 2017, respectively. ECF No. 57, 59. This court issued an order on April 12, 2017, indicating that it would grant relief from its previous judgment (ECF No. 54) pursuant to Federal Rules of Civil Procedure 60(b) and 62.1 if the court of appeals remanded the case. ECF No. 61. This order was issued pursuant to *Nasby v. McDaniel*, 853 F.3d 1049 (9th Cir. 2017). *Id.*

On August 8, 2017, the United States Court of Appeals for the Ninth Circuit issued an order remanding this case "for the limited purpose of enabling the district court to consider whether [Fernandez] is entitled to relief from the judgment." ECF No. 64. This court reopened this action and granted, in part, a motion for relief from the judgment on November 13, 2017. ECF No. 69. The United States Court of Appeals for the Ninth Circuit dismissed Fernandez's appeal for lack of jurisdiction and filed a formal mandate on April 26, 2018, and May 18, 2018, respectively. ECF No. 71, 72. Accordingly, Fernandez's petition is again before this court for the limited purpose of considering the trial transcripts that were filed after the issuance of the judgment in order to determine whether that judgment should be amended. *See* Ex. 1A, ECF No. 68-1; Ex. 1B, ECF No. 68-2; Ex. 1C, ECF No. 68-3; Ex. 2, ECF No. 68-4; Ex. 3, ECF No. 68-5; *see also Nasby*, 853 F.3d at 1052 (holding that "[t]he district court [erred in] fail[ing] to examine important parts of the record of the state court proceedings in its adjudication of [petitioner]'s claims" and, instead, "simply rel[ying] on the facts as described in the Nevada Supreme Court's opinion denying [petitioner] relief").

**Background**

On June 4, 2007, State Trooper Matt Moonin, stopped a black Chevy Blazer driven by Fernandez because the vehicle's trailer hitch was blocking the license plate. Ex. 1B, ECF No. 68-2 at 5, 7, 9-10. Rodney Sierz was the passenger and the registered owner of the Chevy Blazer. *Id.* at 11, 16. Trooper Moonin checked the records for both Fernandez and Sierz and found that both men had criminal histories regarding narcotics. *Id.* at 11, 14-15. Fernandez and Sierz gave vague and inconsistent answers to Trooper Moonin's questions.[1] *Id.* at 38, 44-45.

---

[1] For example, Fernandez and Sierz both said that they had been friends for a long time but did not know each other's last names. Ex. 1B, ECF No. 68-2 at 38. They also indicated that

2

Trooper Moonin called Detective Dale Jaeger, who arrived on scene with a narcotic-detecting dog. *Id.* 18, 74. Trooper Moonin obtained written consent from both Fernandez and Sierz to search the Chevy Blazer. *Id.* at 16-17. The dog "scratch[ed] at the right rear of the speaker box insider the rear cargo area of the truck." *Id.* at 19, 78-79. The speaker box was anchored to the floor, and there was a "large fabricated box which was about the same size as the bottom area of this speaker . . . attached to the undercarriage of the vehicle." *Id.* at 20. The compartment contained 4,720 grams of cocaine. *Id.* at 26-28, 86. Trooper Moonin also found a folded dollar bill in the driver's door that contained 2.2 grams of cocaine. *Id.* at 28-29, 90.

After he was read his *Miranda* rights, Fernandez declined to answer any questions. *Id.* at 35-36. Sierz was also read his *Miranda* rights and did answer some questions posed by Tooper Moonin. *Id.* at 36. Sierz stated that that he knew the secret compartment was in the vehicle, he knew there was controlled substances in the vehicle, and he and Fernandez traveled to get the cocaine together. *Id.* at 37. Later, Sierz agreed to plead guilty in exchange for his testimony against Fernandez.[2] *Id.* at 148-149.

Fernandez was convicted of conspiracy to violate the controlled substances act, trafficking in a controlled substance, and transport of a controlled substance. Ex. 2, ECF No. 31-2. The Nevada Supreme Court affirmed Fernandez's conviction. Ex. 5, ECF No. 31-5. Fernandez filed a post-conviction habeas petition in state district court. Ex. 6, ECF No. 31-6; *see also* Ex. 6A, ECF No. 31-7 (motion for an additional ground to be added to his petition). The petition was

---

they traveled to Las Vegas to attend a fight but did not actually end up attending the fight, and both gave different answers when asked at which hotel they were staying. *Id.* at 11-13.

[2] Sierz testified that Fernandez "mentioned to [him] that he knew an individual that could get cocaine for a reasonable amount of money, kilos of cocaine." Ex. 1B, ECF No. 68-2 at 126, 130. The secret compartment was put into Sierz's vehicle in New York by someone Fernandez knew prior to Fernandez and Sierz driving from Michigan to California to pick up the cocaine. *Id.* at 131, 134, 136.

denied, and the Nevada Supreme Court affirmed. Ex. 8, ECF No. 31-9; Ex. 9, ECF No. 31-10.

Fernandez filed a petition for a writ of habeas corpus and an amended petition in this court. ECF No. 7, 21. The amended petition asserted the following grounds for relief:

>    1. Fernandez's trial counsel failed to object to the prosecution voluntarily dismissing the charges against him.
>
>    2. Fernandez's trial counsel failed to object to the sufficiency of the notice that grand-jury proceedings against Fernandez had commenced.
>
>    3. Fernandez's trial counsel and appellate counsel, who were one in the same, operated under a conflict of interest.
>
>    4. Fernandez's trial counsel failed to submit to the jury the question whether Sierz was an accomplice because, under state law, an accomplice's testimony must be corroborated.
>
>    5. Fernandez's trial counsel did not discuss discovery with him, did not discuss defense strategies with him, and did not cross-examine Sierz whether he was a paid informant for the federal Drug Enforcement Agency.[3]
>
>    7. Fernandez's trial counsel failed to raise a claim that the Double Jeopardy Clause was violated.
>
>    8. Fernandez's trial counsel failed to cross-examine the prosecution's drug-testing experts.

ECF No. 21.

## Discussion

**A.     Standard of Review**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

>    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

---

[3] Ground 6 was previously dismissed because it was based on a confusion of the federal and state schedules of controlled substances. ECF No. 6.

4

was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

5

at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

Section 2254(d) generally applies to unexplained as well as reasoned state-court decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. When the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court

> must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court.

*Id.* at 102.

All but part of one of Fernandez's claims are based on ineffective assistance of his trial counsel. In order to prevail on those claims, Fernandez must demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*[ *v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Finally, a part of one of Fernandez's claims is based on the ineffective assistance of his appellate counsel. In order to prevail on an ineffective assistance of appellate counsel claim,

7

Fernandez "must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues on appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If Fernandez is successful in meeting that burden, "he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

**B.      Grounds 1 and 2**

Fernandez claims that his trial counsel failed to object to the prosecution voluntarily dismissing the charges against him without prejudice. Later, when the prosecution went to the grand jury, Fernandez claims that counsel failed to object to the sufficiency of the notice that grand-jury proceedings against Fernandez had commenced. In its previous order, this court held:

> The jury's verdict of guilt makes harmless any constitutional error in the voluntary dismissal of the preliminary hearing and then submission of the case to the grand jury. See United States v. Mechanik, 475 U.S. 66, 70 (1986). See also Williams v. Stewart, 441 F.3d 1030, 1042 (9th Cir. 2006). Therefore, petitioner could not have suffered any prejudice. Grounds 1 and 2 are without merit.

ECF No. 53 at 4.

In coming to this holding, this court did not "rel[y] on the facts as described in the Nevada Supreme Court's opinion" or fail to "review the relevant portions of the record." *Nasby*, 853 F.3d at 1052-53. Indeed, this court's previous decision was based entirely on a legal basis. *See* ECF No. 53 at 4 (citing *Mechanik*, 475 U.S. at 70 ("Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.") and *Williams*, 441 F.3d at 1042 ("[A]ny constitutional error in the grand jury proceedings is harmless because [petitioner] was ultimately convicted of the offenses

charged.")). Therefore, this court's previous holding that Grounds 1 and 2 lack merit will not be amended.

**C.     Ground 3**

Fernandez claims that his trial counsel operated under a conflict of interest. In its previous order, this court held:

> Petitioner did not allege any facts indicating that counsel operated under an actual conflict of interest in the second trial. The court agrees with respondents that petitioner actually has alleged an error by counsel in the first trial, and that error did not occur in the second trial. The Nevada Supreme Court reasonably applied Strickland.

ECF No. 53 at 5.

In this previous order, this court did rely on the Nevada Supreme Court's fact that "counsel did not concede [Fernandez]'s guilt during the second trial." Ex. 9, ECF No. 31-10 at 4. However, after reviewing the transcript of Fernandez's second trial, it is clear that this fact is supported by the record: there was no concession of guilt by Fernandez's trial counsel during the second trial.[4] *See* Ex. 1A, ECF No. 68-1; Ex. 1B, ECF No. 68-2; Ex. 1C, ECF No. 68-3. Accordingly, this court's previous holding that "[t]he Nevada Supreme Court reasonably applied *Strickland*" will not be amended.

---

[4] Although this court's holding is based on Fernandez's trial counsel's lack of any concession of guilt during the second trial, it is noted that Fernandez's trial counsel did err in the first trial. *See* Ex. 6, ECF No. 7-2 at 20 (opening statement by Fernandez's trial counsel during the first trial stating that "[i]f you don't find Mr. Fernandez guilty of transport of a controlled substance and conspiracy to violate the Uniform Controlled Substances Act, you're not paying attention to me. We don't have an offense to that. He's absolutely guilty of it. And if that's what he were charged with, and that's all, my recommendation would be plead to it. But he's charged with one more thing that makes all the difference in the world. It's trafficking a controlled substance").

9

In Ground 3, Fernandez also claims that because his appellate counsel had a conflict of interest, he did not raise all available claims on direct appeal and did not contact Fernandez during the direct appeal. In its previous order, this court held:

> The court has noted . . . that counsel was not operating under a conflict of interest because at the first trial counsel conceded [Fernandez]'s guilt on two counts. Appellate counsel also did not operate under a conflict of interest simply because appellate counsel does not raise on direct appeal the issues that petitioner wanted raised. The Nevada Supreme Court reasonably applied Strickland. To the extent that [Fernandez] is claiming that appellate counsel provided ineffective assistance, regardless of a conflict of interest, because appellate counsel did not raise on direct appeal the issues that underlie the grounds in the petition, the claim is without merit for the same reasons why those grounds are without merit.

ECF No. 53 at 10. In coming to this holding, this court did not "rel[y] on the facts as described in the Nevada Supreme Court's opinion" or fail to "review the relevant portions of the record." *Nasby*, 853 F.3d at 1052-53. Rather, this court relied first on its previous finding that Fernandez's trial counsel had no conflict of interest because he made no concession of guilt during the second trial, which, as noted previously, is supported by the record, and second on the legal basis that a conflict of interest does not exist simply because appellate counsel does not raise every issue on appeal pursuant to an appellant's wishes. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that there is no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"). Therefore, this court's previous holding that this second portion of Ground 3 lacks merit will not be amended.

**D.     Ground 4**

Fernandez claims that his trial counsel failed to submit to the jury the question whether Sierz was an accomplice, because under state law an accomplice's testimony must be corroborated. In its previous order, this court held:

> Based upon the facts of the traffic stop and search of the vehicle, summarized [by the Nevada Supreme Court], the Nevada Supreme Court reasonably could have concluded that that evidence provided sufficient corroboration to Sierz's testimony, such that trial counsel reasonably could have decided not to challenge the issue.
>
> The Nevada Supreme Court also reasonably determined that counsel did not need to argue that the jury should have determined that Sierz was an accomplice. The sole reason for arguing that Sierz was an accomplice was to ensure that the corroboration requirement of Nev. Rev. Stat. § 175.291 applied to Sierz's testimony. If Sierz was not an accomplice, then the corroboration requirement did not apply. The evidence described above showed that petitioner and Sierz were accomplices. The Nevada Supreme Court analyzed Sierz's testimony as if he was an accomplice and found that plenty of corroborating evidence existed. Even if a determination that a person is an accomplice is a matter left to the jury, petitioner suffered no prejudice from any lack of argument to the jury that Sierz was an accomplice.

ECF No. 53 at 5-6. In its previous order, this court did rely on the Nevada Supreme Court's summary of the facts to conclude that Fernandez and Sierz were accomplices and to conclude that Sierz's testimony was corroborated. However, after reviewing the transcript of Fernandez's trial, it is clear that Fernandez and Sierz were accomplices and that law enforcement's testimony corroborated Sierz's testimony.

First, regarding whether the evidence presented at trial supported the Nevada Supreme Court's conclusion that Sierz and Fernandez were accomplices, Sierz testified that he was charged with trafficking in a controlled substance, transport of a controlled substance, and conspiracy to violate the Uniform Controlled Substances Act regarding the cocaine that was found by law enforcement in the secret compartment of the Chevy Blazer. Ex. 1B, ECF No. 68-2 at 174-75. Fernandez was also charged—and convicted of—conspiracy to violate the controlled substances act, trafficking in a controlled substance, and transport of a controlled substance regarding the same events. Ex. 2, ECF No. 31-2. These charges alone demonstrate that Fernandez and Sierz were accomplices. *See* Nev. Rev. Stat. § 175.291(2) (defining an

11

accomplice as "one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given").

Turning to the corroboration of Sierz's testimony, Sierz testified that he and Fernandez drove to New York to get a secret compartment installed in his Chevy Blazer, that they purchased cocaine from an individual named Ernie in Palm Springs, California, that the cocaine was put into the secret compartment for transport, and that Fernandez and he were driving back to Michigan when they got pulled over by Trooper Moonin. Ex. 1B, ECF No. 68-2 at 130-32, 136, 139, 141. Similarly, Trooper Moonin testified that he stopped a black Chevy Blazer driven by Fernandez, that Sierz was a passenger and owner of the vehicle, that the narcotic-detecting dog alerted to a controlled substance in the vehicle, and that he found a secret compartment attached to the undercarriage of the vehicle containing cocaine. *Id.* at 7-11, 16, 19-20. Accordingly, Trooper Moonin provided corroboration for Sierz's testimony regarding the secret compartment, the location of the cocaine, and the details surrounding the stop and search of the vehicle. Thus, under *Nasby*, a "review [of] the relevant portions of the record" support this court's previous determination that Ground 4 lacks merit. 853 F.3d at 1052-53.

It is worth noting that instead of arguing whether Fernandez and Sierz were accomplices, Fernandez's trial counsel argued that Sierz's testimony was not corroborated. *See* Nev. Rev. Stat. § 175.291(1) ("A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."). Fernandez's trial counsel's closing argument focused mainly on the fact that Fernandez did not have actual or constructive possession of the cocaine to satisfy the

trafficking count because Fernandez was simply a paid employee of Sierz and not an equal co-conspirator. *See* Ex. 1C, 68-3 at 54, 57, 60. Fernandez's trial counsel asserted that Sierz's testimony was not credible and that the State did not corroborate any of the following facts testified to by Sierz: that Fernandez packaged the cocaine in Palm Springs, that Sierz and Fernandez both paid for portions of the cocaine, that Fernandez knew the mechanic in New York who installed the secret compartment, and that Fernandez knew the contact in Palm Springs with the cocaine. *Id.* 57-59   Fernandez's trial counsel also argued:

> [A] defendant cannot be found guilty based upon the testimony of an accomplice unless such testimony is corroborated by other evidence which tends to connect such defendant with the commission of the offense. And when it comes to the trafficking, all of the relevant evidence on that count comes from Rodney Sierz, every essential detail. It is not corroborated by other evidence.

*Id.* at 59-60. Accordingly, Fernandez's trial counsel reasonably chose a strategy of challenging whether Sierz's testimony was corroborated rather than challenging whether Fernandez and Sierz were accomplices. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time."). Therefore, because this court's previous determination that Ground 4 lacks merit is supported by the record and because Fernandez's trial counsel's closing argument strategy was reasonable, this court will not amend its prior ruling on Ground 4 that Fernandez's trial counsel's performance was not deficient.

**E.    Ground 5**

Fernandez claims that his trial counsel provided ineffective assistance because he did not discuss discovery with him, did not discuss defense strategies with him, and did not cross-examine Sierz whether Sierz was a paid informant for the federal Drug Enforcement Agency. In its previous order, this court held:

> Petitioner does not allege what evidence or theories he wanted to discuss with counsel, nor does he allege how such discussion would have led to a reasonable

13

probability of a different result at trial. Petitioner also does not allege facts showing that Sierz committed perjury. He alleges a broad web of conspiracy that includes his own counsel, but petitioner does not take into account the critical facts: He was caught red-handed with ten pounds of cocaine. The Nevada Supreme Court reasonably could have concluded that petitioner suffered no prejudice from a lack of inquiry into what other deals, if any, Sierz had with the Drug Enforcement Agency.

ECF No. 53 at 6-7.

In this previous order, this court relied on the fact that Fernandez "was caught red-handed with ten pounds of cocaine," a fact that was obtained from the Nevada Supreme Court's summary of the facts, to conclude that Fernandez cannot demonstrate prejudice. However, after reviewing the transcript of Fernandez's trial, this fact is undoubtedly supported by the record. Trooper Moonin stopped a vehicle that was driven by Fernandez and found 4,720 grams—approximately 10 pounds—of cocaine. Ex. 1B, ECF No. 68-2 at 8, 10, 27, 86. Accordingly, this court's previous holding that Ground 5 is without merit will not be amended.

**F.    Ground 7**

Fernandez claims that his trial counsel failed to raise a claim that the Double Jeopardy Clause was violated. In its previous order, this court gave an overview of *Arizona v. Washington*, 434 U.S. 497 (1978), and then held:

> In [Fernandez]'s case, the prosecution was in no way at fault for the concession of guilt on two counts. That concession followed from a decision of defense counsel without first obtaining ironclad consent from petitioner. [Footnote 2: The state district court noted that counsel told [Fernandez] that his best option was to admit guilt to the two less-serious counts while contesting the most-serious count. [Fernandez]'s response was "to do whatever you want." Ex. 8, at 5 (ECF No. 31-9, at 6). [Fernandez]'s response could be seen as consent, but it also could be seen as a comment by a person who is frustrated that the case is not going the way he wants it to go. However, even if [Fernandez] did give unequivocal consent to counsel's strategy before trial, [Fernandez] still was able to change his mind.] The concession was worse for [Fernandez] than Washington's improper comment. The improper comment in Washington criticized the prosecution. The concession in [Fernandez]'s case harmed his own case, given that [Fernandez] did not want to concede guilt. Any juror who heard that concession on two of three counts, and

14

> then later heard arguments that [Fernandez] should be found not guilty on all three counts, would at least wonder what had happened. The Nevada Supreme Court reasonably could have concluded that the concession created a manifest necessity for a mistrial and a retrial. The Nevada Supreme Court also reasonably could have concluded that an objection to retrial had no reasonable probability of success, such that [Fernandez] suffered no prejudice from the lack of an objection. Ground 7 is without merit.

ECF No. 53.

In coming to this holding, this court did not "rel[y] on the facts as described in the Nevada Supreme Court's opinion" or fail to "review the relevant portions of the record." *Nasby*, 853 F.3d at 1052-53. In fact, this court's previous decision was based entirely on a legal basis. *See* ECF No. 53 at 7-9 (citing *Arizona v. Washington*, 434 U.S. 497 (1978)). Therefore, this court's previous holding that Ground 7 lacks merit will not be amended.[5]

//

---

[5] It is noted that after this court issued its original order denying Fernandez's petition for writ of habeas corpus on March 6, 2017, a relevant case was decided: *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018). The United States Supreme Court "h[e]ld that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* at 1505. As a reminder, during his first trial, Fernandez's trial counsel conceded Fernandez's guilt on two counts without Fernandez's consent to do so. *See* Ex. 6, ECF No. 7-2 at 20 (opening statement by Fernandez's trial counsel during the first trial stating that "[i]f you don't find Mr. Fernandez guilty of transport of a controlled substance and conspiracy to violate the Uniform Controlled Substances Act, you're not paying attention to me. We don't have an offense to that. He's absolutely guilty of it. And if that's what he were charged with, and that's all, my recommendation would be plead to it. But he's charged with one more thing that makes all the difference in the world. It's trafficking a controlled substance"). Because a defendant may "insist on maintaining [his or] her innocence at the guilt phase of a . . . trial," *McCoy*, 138 S.Ct. at 1508, and because Fernandez's trial counsel failed to abide by Fernandez's wishes to not concede guilt, it is now concluded that the Nevada Supreme Court even more reasonably could have concluded that the concession created a manifest necessity for a mistrial and retrial.

## G. Ground 8

Fernandez claims that his trial counsel failed to cross-examine the prosecution's drug-testing experts.[6] In its previous order, this court held:

> The only issue that petitioner raises is why it took three months to perform a laboratory test for the cocaine, but petitioner does not explain why it was important for counsel to ask that question. Petitioner does not allege what else counsel should have asked. The Nevada Supreme Court reasonably concluded that petitioner had failed to demonstrate prejudice.

ECF No. 53 at 9.

In this previous order, this court only relied on the Nevada Supreme Court's fact that "[t]he State's experts testified regarding their testing of the cocaine and additional evidence discovered in the vehicle." *See* Ex. 9, ECF No. 31-10 at 5. The court used this fact and the Nevada Supreme Court's reasoning that "the nature of the expert testimony and the overwhelming evidence of [Fernandez]'s guilt," which this court has already concluded is supported by the record,[7] to conclude that Fernandez failed to demonstrate prejudice. *Id.* However, again, after reviewing the transcript of Fernandez's trial, the fact regarding the scope of the experts' testimony is plainly supported by the record: Dale Jaeger testified that he did a field test on the cocaine and then impounded it.[8] Ex. 1B, ECF No. 68-2 at 82, 84, 86. And

---

[6] It is true that Fernandez's trial counsel did not conduct cross-examination of Dale Jaeger, the K-9 handler who took custody of the controlled substances, or Thomas Melville, a forensic scientist with the Las Vegas Metropolitan Police Department. *See* Ex. 1B, ECF No. 68-2 at 3, 72, 82, 98. Fernandez's trial counsel only asked two brief follow-up questions after Jaeger answered a juror's question. *See id.* at 97.

[7] Trooper Moonin stopped a vehicle that was driven by Fernandez and found 4,720 grams—approximately 10 pounds—of cocaine. Ex. 1B, ECF No. 68-2 at 8, 10, 27, 86.

[8] Dale Jaeger testified that impounding the cocaine consisted of the following:

> We package it up, label it properly, and then we put evidence seals on it with the date and our – and my initials and P-number, and it's taken to one of the locations

16

Thomas Melville testified about the examinations he performed on the cocaine: he weighed it, performed two preliminary color tests, and then put it into a Gas Chromatograph Mass Spectrometer. *Id.* at 100, 103-104. Accordingly, this court's previous holding that Ground 8 is without merit will not be amended.

**Certificate of Appealability**

As a review of Fernandez's trial transcripts failed to amend this court's previous determinations regarding the merits of Fernandez's claims, it is determined that this court's previous determination that none of the claims are entitled to a certificate of appealability will not be amended.

**Conclusion**

IT IS HEREBY ORDERED that the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 21) remains DENIED. The clerk of the court shall not amend the judgment previously entered on March 7, 2017 (ECF NO. 54).

IT IS FURTHER ORDERED that Fernandez is still denied a certificate of appealability.

Dated: September 20, 2019

_____
Gloria M. Navarro, Judge
United States District Court

---

that we have in the department where it's dropped in an evidence vault where it stays locked. Nobody else has access to it until the evidence custodians pick it up and take custody of it and they transport it to the main vault.

Ex. 1B, ECF No. 68-2 at 86.

17